**ROHM AND HAAS COMPANY,**
Plaintiff,

v.

**MOBIL OIL CORPORATION, Defendant.**

Civ. A. No. 78–384.

United States District Court,
D. Delaware.

Dec. 12, 1978.

Rudolph E. Hutz, William E. Lambert III, James M. Mulligan, N. Richard Powers, and George W. F. Simmons of Connolly, Bove & Lodge, Wilmington, Del., for plaintiff.

Edmund D. Lyons of Morris, James, Hitchens & Williams, Wilmington, Del., and John A. Diaz, J. Robert Dailey and Arnold I. Rady of Morgan, Finnegan, Pine, Foley & Lee, New York City, for defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This action is before the Court on defendant Mobil Oil Corporation's ("Mobil") motion for a stay pending decision by the United States Patent and Trademark Office ("PTO") on Mobil's application for reissue of the patent in suit. The parties have briefed and argued the motion and this Memorandum Opinion addresses their contentions.

Plaintiff, Rohm and Haas Company ("Rohm & Haas"), filed this action on September 11, 1978, against the defendant, Mobil, seeking a declaratory judgment that Mobil's United States Letters Patent No. 3,979,437 ("437 patent") is invalid, unenforceable and not infringed.[1] Both Rohm & Haas and Mobil hold patents on diphenyl ethers useful as herbicides. Rohm & Haas holds patents issued in 1973 and 1974 on certain specific diphenyl ether compounds, which it markets under the trade name "Blazer." Mobil's 437 patent covers a class of diphenyl ether compounds that allegedly includes the Blazer compounds. Consequently, the Mobil and Rohm & Haas patents are believed to stand in a genus-species relationship thus creating a classic "blocking patent" situation so that neither Mobil nor Rohm and Haas can manufacture or sell Blazer compounds without infringing the other's patent. This action was instituted after cross-licensing negotiations between the parties proved unsuccessful.

On October 19, 1978, Mobil applied for reissue of its 437 patent pursuant to 37 C.F.R. § 1.171 et seq. (1977). The recently

1. Docket Item 1.

modified reissue procedure [2] enables a patentee, like Mobil, to seek reconsideration of an original patent in view of prior art and other information relevant to patentability which was not previously considered by the PTO. In its application for reissue,[3] Mobil requests that the PTO review the 437 patent in light of the allegations contained in the complaint in this action.

Stays of limited duration have been granted by several federal courts pending the outcome of a reissue application. *See, e. g., PIC, Inc. v. The Prescon Corp.,* 77 F.R.D. 678 (D.Del.1977); *Fisher Controls Co. v. Control Components, Inc.,* 443 F.Supp. 581 (S.D.Iowa 1977). As Judge Wright observed in *PIC, Inc. v. The Prescon Corp., supra:*

> "The grant or denial of a stay is addressed to the sound discretion of the court. 'As with any exercise of discretion, the Court must balance the equities presented by the particular set of facts.'" (citations omitted).

77 F.R.D. at 681, *quoting General Tire & Rubber Co. v. Watson-Bowman Associates, Inc.,* 193 U.S.P.Q. 479 (D.Del.1977). Among the factors to be considered here is whether the reissue proceeding can be expected to result in a simplification of the issues or proof or otherwise benefit this litigation. *See Fisher Controls Co. v. Control Components, Inc., supra,* 443 F.Supp. at 582–83. For the reasons stated below, the Court concludes that the benefits of a limited stay in this case outweigh the potential harm to the plaintiff that the resultant delay might cause.[4] The Court is convinced, however, that in order to realize the full benefit of the stay, it must permit a limited amount of discovery now on some of the issues that will be before the PTO in the reissue proceeding. Therefore, the Court will stay all further proceedings in this action with the exception of a few specifically defined lines of discovery by plaintiff pending disposition of the reissue application.

One of the central issues in this case is whether Mobil's application for the 437 patent, which was filed on September 29, 1975, was a "continuation" of a prior Mobil application filed on February 11, 1971 and, therefore, entitled under 35 U.S.C. § 120 to the benefit of the earlier filing date. If it was not a continuation, the Netherlands patent application of Rohm & Haas published in 1973 would be prior art with respect to the 437 patent and present a statutory bar to its patentability under 35 U.S.C. § 102.

Section 120 of Title 35 sets forth the conditions for obtaining the filing date of an earlier patent application. Section 120 provides:

> An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

The first paragraph of section 112 requires that a patent specification contain a written description of the invention and how to make and use it,

> in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same, and . . . set forth the best mode contemplated by the inventor of carrying out his invention.

---

**2.** The applicable rule, 37 C.F.R. § 1.175(a)(4), became effective on March 1, 1977.

**3.** Docket Item 11.

**4.** The motion for a stay in this case was filed six weeks after the complaint was filed and before any discovery had taken place. Given the complicated nature of the issues raised by the complaint, a limited stay at this early stage does not seem likely to prolong the litigation significantly.

The 437 patent and Mobil's 1971 patent application contain exactly the same written description of the invention; only the claims are different. An issue to be resolved in this case is whether the written description in the 437 patent adequately discloses the invention claimed in the first claim of the 437 patent.

The written description in the 1971 application and the 437 patent disclosed a generic formula, 26 detailed examples of typical chemical compounds included in the invention and a list of 57 other compounds denominated "non-limiting examples." Rohm & Haas avers that the number of possible compounds embraced by the generic formula may be as high as 200 billion. It further alleges that Mobil's 1971 application did not disclose specifically any of the Blazer compounds and that Mobil, in fact, did not know of their existence or importance until after it examined Rohm & Haas' Netherlands patent application, published in September 1973. Mobil, on the other hand, contends that one of the compounds listed as an example of the invention in the 1971 application[5] is a reverse isomer of the Blazer compounds. Mobil further contends that the disclosure of the compound referred to plus the generic formula was sufficient to support the first claim in the 437 patent, which in turn encompassed the Blazer compounds.

Whether the description in the 1971 patent application sufficiently discloses to one skilled in the art to which it pertains the invention claimed in the 437 patent to warrant treating the 437 patent as a "continuation" of the 1971 application is a question particularly well-suited to resolution by the PTO in the first instance. The issues involved are highly technical and appear susceptible to resolution on a paper record.

The same cannot be said, however, of Rohm & Haas' contention

> that Mobil wrongfully concealed material facts from the PTO during the prosecution of the alleged continuation application [for the 437 patent] and that the inventor [Theissen] improperly claimed to be the first inventor when he knew that he had not invented the group of compounds set forth in the claims of the 437 patent. (Docket Item 16, p. 7).

The accuracy of that allegation cannot be assessed in a factual vacuum. To be entitled to any significant weight in this Court, the PTO's decision on the fraud issue[6] would have to be based on information beyond that presently available to it. Because the disclosure statement in the 1971 application is extremely broad, the Court is reluctant to accept at face value Theissen's statement in 1975 that he had invented the compounds claimed in the 437 patent as early as 1971. The credibility of that statement is weakened further by the circumstantial evidence that the 1975 "continuation" was not filed until after the discovery of the Blazer compounds was made public. The Court, of course, expresses no opinion on the merits of this case at this time, but merely concludes that the PTO should have the benefit of some discovery directed toward what Mr. Theissen knew and did in relation to the 1971 patent application (Serial No. 114,712) and the continuation patent applications filed in 1973 and 1975 (Serial Nos. 398,610 and 617,569.) Recognizing that the PTO itself may not order discovery, the Court encourages the parties to bring any relevant matter developed during the discovery permitted in this case to the attention of the patent examiner handling the reissue application.[7]

---

**5.** The compound is named in the description section of the 437 patent at lines 65 and 66 of column 2. See Docket Item 11 for a copy of the 437 patent.

**6.** By filing for reissue of its 437 patent, Mobil submitted its entire patent application to examination, "including the question of the presence or absence of 'fraud' or 'deceptive intention' in the prosecution of the application resulting in

the patent sought to be reissued." *In re Altenpohl*, 198 USPQ 289, 309 (Comm'r Pats. 1976).

**7.** Rohm & Haas may submit a written protest against the application for reissue to the PTO under 37 C.F.R. § 1.291. The examiner assigned to the case will consider any facts brought to his attention, but the PTO will not give the protestant a hearing as a matter of right. *Carey v. The New York Home Sewing*

Accordingly, the Court will stay all proceedings in this action pending decision on the reissue application except that the plaintiff may pursue the following items of discovery:

(1) the deposition of Robert J. Theissen;

(2) answers to interrogatories 9, 14, 24, 30, 31, 40, 41, 42, 43, 44, 45, 46, 47, 54, 55, 56 and 57 in the set of interrogatories submitted to the defendant in conjunction with the complaint (Docket Item 3); and

(3) production of all documents or records used by Mobil to substantiate its answers to the interrogatories listed above.

An Order will be entered in accordance with this Memorandum Opinion.

*Machine Co.,* 1901 Decisions of the Commissioner of Patents 165; 97 Official Gazette 1171 (Nov. 5, 1901); *see* Docket Item 16A, ex. 2.

As to the plaintiff's contention that determination of the issues joined herein requires discovery of facts known only to Mobil, the Court notes that 37 C.F.R. § 1.175(b) authorizes the patent examiner to "require additional information or affidavits [or declarations] concerning the application for reissue and its object."